# CIRCUIT COURT OF PRINCE WILLIAM COUNTY

A Attorney, L.L.C.

   v.

Deborah Clare Olson,
AAXA Discount Mortgage,
and Chase Home Finance, L.L.C.

Case No. CL79474

BY JUDGE ROSSIE D. ALSTON, JR.

February 15, 2008

This matter came before the Court upon the Demurrer of Deborah Clare Olson ("Ms. Olson") which was heard on February 15, 2008. It appears that the parties are in agreement as to the following facts.

Timothy Graves of A Attorney, L.L.C., was retained as counsel for Scott Charles Olson ("Mr. Olson") in the matter of Scott Charles Olson v. Deborah Clare Olson in Case Numbers CH57813 and CL72027.

On June 20, 2006, Mr. Olson and Ms. Olson, who were both represented by counsel, entered into a property settlement agreement. The agreement provided that Mr. Olson would transfer title to the property known as 12615 Moray Firth Way, Bristow, Virginia 20136 ("the property") to Ms. Olson. On July 21, 2006, this Court incorporated the property settlement agreement into the Final Decree of Divorce.

On February 7, 2007, Mr. Graves filed an attorney's lien on the property pursuant to § 54.1-3932 of the Code of Virginia. On February 17, 2007, Mr. Olson signed the property over to Ms. Olson by quitclaim deed. The quitclaim deed was recorded on March 29, 2007, as Instrument No. 200703290038165.

For several reasons, this Court funds that the Demurrer should be sustained.

First, the lien was not properly perfected in time. As a rule, to ensure that any settlements would be void against the lien, the Plaintiff had to give notice to the opposing party before the settlement. Va. Code § 54.1-3932(A) gives an attorney the right to a lien for attorney's fees in a cause of action for divorce,[1] and grants the attorney a right to protect the lien by written notice. Va. Code Ann. § 54.1-3932(A) (1950) (as amended). The statute specifically provides that when an attorney-client contract "is made and written notice of the claim of such lien is given to the opposite party, his attorney, or agent, any settlement or adjustment of the cause of action shall be void against the lien so created, except as proof of liability on such cause of action." *Id.; see also Fary v. Aquino*, 218 Va. 889, 891, 241 S.E.2d 799 (1978) (lien was perfected upon notice to opposing party so that former client's subsequent assignment of its rights to another party did not defeat the lien); *Military Circle Pet Ctr. # 94 v. Docktor Pet Holdings (In re Military Circle Pet Ctr. # 94)*, 181 B.R. 282, 288 (Bankr. E.D. Va. 1994) (holding that attorney's lien on promissory note was not perfected because notice was not given to the opposing party and thus the lien had no priority over any other claim).

Under the plain language of § 54.1-3932(A), a lien was created upon Mr. Olson's cause of action when Mr. Olson entered into a contract with the Plaintiff to pursue a divorce. However, the parties reached a settlement agreement in 2006, several months prior to the date when the Plaintiff provided written notice of the claim of the lien to Ms. Olson. Because written notice of the lien was not given prior to the property settlement agreement, the lien was not yet perfected and can not void the settlement.

Second, enforcement of the lien against the property awarded to Ms. Olson would frustrate the Final Decree of Divorce entered by this Court and the private contract negotiated by the parties. *See, Gloucester Realty Corp. v. Guthrie*, 182 Va. 869, 875, 30 S.E.2d 686 (1944) ("The general rule is that no statute, however positive in its terms, is to be construed as designed to interfere with existing contracts, rights of action, or suits, and especially vested rights, unless the intention that it shall so operate is expressly

---

[1] The statute states: "Any person having . . . a cause of action for annulment or divorce may contract with any attorney to prosecute the same, and the attorney shall have a lien upon the cause of action as security for his fees for any services rendered in relation to the cause of action or claim." Va Code Ann. § 54.1-3932(A) (1950) (as amended).

declared."); *Jones v. Jones*, 19 Va. App. 265, 268-69, 450 S.E.2d 762 (1994) ("Where [a separation] agreement is plain and unambiguous in its terms, the rights of the parties are to be determined from the terms of the agreement and the court may not impose an obligation not found in the agreement itself.").

Third, this Court observes that the parties negotiated the property settlement agreement in good faith. Mr. and Ms. Olson were both represented by counsel when the parties agreed to transfer the property to Ms. Olson. *See Stevens v. Sparks*, 205 Va. 128, 133, 135 S.E.2d 140 (1964) (superseded on other grounds) ("An attorney may have a common law possessory lien which is his right to retain the property or money belonging to his client until his fees are paid. Such a lien depends upon possession and if he voluntarily parts with possession the lien ceases."). There is no evidence that the agreement was negotiated in bad faith to defraud the Plaintiff of his fee. *Compare Walton & Adams, P.C. v. D & H Distrib. Co.*, 33 Va. Cir. 98, 99 (Fairfax County 1993) (holding defendant was not liable for plaintiff's attorney fees because defendant negotiated settlement in good faith), *with Katopodis v. Liberian S/T Olympic Sun*, 282 F. Supp. 369, 372 (E.D. Va. 1968) (holding attorney was entitled to attorney's fees because the parties reached a settlement without the knowledge or consent of counsel in a bad faith effort to deprive the attorney from collecting his fee).

In conclusion, and in light of the arguments of counsel, the record in this matter, and the law, it is hereby ordered that the Defendant's Demurrer is sustained.

February 29, 2008

This matter came before this court on February 29, 2008, upon Plaintiff's Motion to Reconsider the decision on February 15, 2008, to sustain the Defendant's Demurrer.

*Facts*

As presented to the court and supported by the record in this matter, the following facts appear not to be in dispute. Timothy Graves of A Attorney, L.L.C., was retained as counsel for Scott Charles Olson ("Mr. Olson") in the divorce action against Deborah Clare Olson ("Ms. Olson") in the matter of Olson v. Olson in Case Numbers CH57813 and reclassified case CL72027.

On June 20, 2006, Mr. Olson and Ms. Olson, who were both represented by counsel, entered a property settlement agreement. The agreement provided that Mr. Olson would transfer title to the property known

as 12615 Moray Firth Way, Bristow, Virginia 20136 ("the Moray Firth property") to Ms. Olson. The agreement further provided that the parties were solely responsible to pay their individual attorney's fees. On July 21, 2006, this court incorporated the property settlement agreement in the Final Decree of Divorce.

On February 7, 2007, Mr. Graves filed and sought to enforce an attorney's lien on the Moray Firth property pursuant to § 54.1-3932 of the Code of Virginia. Also included in the record of proceedings was a suggestion that Mr. Graves' (now former) client, Mr. Olson, was filing or had filed a petition in bankruptcy. On February 17, 2007, Mr. Olson signed the Moray Firth property over to Ms. Olson by quitclaim deed. The quitclaim deed was recorded on March 29, 2007.

*Standard of Review*

The demurrer's function is to test whether the challenged pleading states a cause of action upon which relief can be granted. Va. Code Ann. § 8.01-273(A) (1950) (as amended); *Faulknier v. Shafer*, 264 Va. 210, 214-15, 563 S.E.2d 755, 758 (2002). In determining the legal sufficiency of a pleading, a circuit court is "required to consider all reasonable inferences of fact which fairly and justly could be drawn from the facts alleged." *Faulknier*, 264 Va. at 214-15 (citing *Ryland Group, Inc. v. Wills*, 229 Va. 459, 461, 331 S.E.2d 399, 401 (1985)); *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). A demurrer must be sustained if it is clear that the challenged pleading fails to state a valid cause of action. *Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 303, 618 S.E.2d 331, 333 (2005).

*Analysis*

For several reasons, as articulated herein, this court finds that the Plaintiff's Motion to Reconsider should be denied and the Defendant's Demurrer should be sustained. The court notes that this appears to be a matter of first impression in the Commonwealth. The parties were not able to provide and the court was unable to locate a Virginia case directly applicable to this set of facts. This is probably due to the fact that § 54.1-3932 of the Code of Virginia was only recently amended to apply in divorce cases. This ruling is a further clarification of the prior ruling made by this court on February 15, 2008.

*1. The Statute Demonstrates Intent to Honor Final Distribution of Marital Property*

First, a plain reading of § 54.1-3932 of the Code of Virginia militates against the Plaintiff's position. The statute states, "Any person having or claiming . . . a cause of action for annulment or divorce, may contract with any attorney to prosecute the same, and the attorney shall have a lien upon the cause of action as security for his fees for any services rendered in relation to the cause of action or claim." Va. Code Ann. § 54.1-3932(A). In this case, Mr. Olson contracted with the Plaintiff to prosecute Mr. Olson's claim. However, the Plaintiff has never contracted to represent Ms. Olson. The Plaintiff has never rendered legal services for Ms. Olson, and the Plaintiff has never been owed fees by Ms. Olson. This court will not torture the statutory language into allowing a lien for fees owed by Mr. Olson against property transferred to Ms. Olson by agreement and court order.

Furthermore, Plaintiff's arguments are undercut by the strong public policy in favor of seeking finality of the distribution of marital property and honoring the contractual intent of parties to a property settlement. The Plaintiff fails to provide any relevant authority to justify an action that would thwart the parties' valid agreement. In Plaintiff's Motion to Reconsider, the Plaintiff alleged that Ms. Olson breached the property settlement agreement when she failed to refinance the deed of trust on the property. The court finds that this fact is not probative to the matter at hand. Under Virginia law, when a court exercises its authority to incorporate in a decree a valid agreement between the parties, the parties' agreement "shall be deemed for all purposes to be a term of the decree and enforceable in the same manner as any provision of such decree." Va. Code Ann. § 20-109.1; *Campbell v. Campbell,* 32 Va. App. 351, 356, 528 S.E.2d 145, 147 (2000).

Rule 1:1 implements the policy of favoring certainty of results in judicial proceedings and that rule is to be applied vigorously, while exceptions to the rule are applied narrowly. Va. Sup. Ct. R. 1:1; *McEwen Lumber Co. v. Lipscomb Bros. Lumber Co.,* 234 Va. 243, 247 (1987). Accordingly, this court declines to modify or circumvent the bargain reached by the parties.[2] *See Cooley v. Cooley,* 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980) ("Marital

---

[2] The court notes that the parties agreed to be responsible for their own attorney's fees and § 20-109 bars a trial court from "directing the payment of . . . suit money or counsel fees . . . except in accordance with the [parties'] . . . contract." *Sanford v. Sanford,* 19 Va. App. 241, 249, 450 S.E.2d 185, 190 (1994) (alterations in original); Va. Code Ann. § 20-109(C).

property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain."); *Gloucester Realty Corp. v. Guthrie*, 182 Va. 869, 875 (1944) ("The general rule is that no statute, however positive in its terms, is to be construed as designed to interfere with existing contracts, rights of action, or suits, and especially vested rights, unless the intention that it shall so operate is expressly declared."); *Jones v. Jones*, 19 Va. App. 265, 268-69 (1994).

Moreover, applying the lien against the property would thwart the apparent intent of the statute to protect the final resolution of distribution of marital property. In 2001, when § 54.1-3932 was amended to apply in divorce cases, the legislature specifically provided, "In causes of action for annulment or divorce, an attorney may not exercise his claim until the divorce judgment is final and all residual disputes regarding marital property are concluded." Va. Code Ann. § 54.1-3932(A). The Plaintiff argues that his lien is valid because it was perfected against the Moray Firth property after the Final Decree of Divorce, but before a quitclaim deed was executed.[3] The Plaintiff seems to imagine a race between the parties and their attorneys, immediately after entry of the Final Decree, to see who can first execute their interest in the property. Contrary to the Plaintiff's interpretation of the law, the terms of the statute evince the legislature's intent to protect the property distributed to an innocent spouse from an attorney's lien. This protective provision conforms with common sense. If the lien could be enforced against the Moray Firth property awarded to Ms. Olson, it would frustrate both the Final Decree of Divorce entered by this court and the private contract negotiated by the parties.

Finally, it has been suggested that the 2001 amendment to this particular Code section was an attempt to place divorce lawyers on an equal footing with personal injury lawyers in the ability to collect fees due and owing. This court has absolutely no difficulty with attorneys proceeding to legally collect fees due and owing from their clients. However, in this court's view, the protocol adopted in this case by the Plaintiff to collect such fees was not what was envisioned by the legislature.

---

[3] The Plaintiff suggests that the recent decision of *Rogers v. Rogers*, Case No. 0608-07-1 (Va. Ct. App. Feb. 12, 2008), available at http://www.courts.state.va.us/opinions/opncavwp/0608071.pdf sheds light on this issue. The case addresses whether a court may consider the bankruptcy of a spouse when determining spousal support. The court finds that the *Rogers* analysis is inapposite.

Interpreting the statute to protect transfers of property to innocent spouses is reasonable because the collection of fees pursuant to a lien in a domestic relations case is different in kind than that of a lien in a personal injury case. In a personal injury case, the fees that are subject to the lien are fees that have become by law the property of the client by virtue of a judgment or settlement won against a third party. In this case, the property sought to be levied against is not the property *of the client* either by way of settlement or judgment, but rather is the property of *the other party* awarded or acquired through arms-length negotiation. The result, in the context of this case and its peculiar facts, is that the only property that can be equitably subjected to a properly perfected attorney's lien is that property either *owned by or awarded to the client* of the attorney seeking to enforce the lien at the conclusion of the litigation.

The Defendant cited several foreign decisions for the proposition that an attorney's lien can only attach to the tangible fruits of the attorney's services. *See Glickman v. Scherer*, 566 So. 2d 574, 575 (Fl. App. 1990) ("It is not enough, however, to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services."); *In re Marriage of Berkland*, 762 P.2d 779 (Colo. App. 1988) ("The attorney's lien attaches automatically to any monies or property due or owing to the client on any judgment the attorney may have obtained or assisted in obtaining to the extent of the attorney's reasonable fees remaining due and unpaid . . . before the lien can be enforced against third parties, notice must be given pursuant to statute."); *Sowder v. Sowder*, 977 P.2d 1034 (N.M. App. 1999) ("An attorney's charging lien attaches to the fruits of the attorney's skill and labor."). Because the court has decided on other grounds, the court does not reach this particular issue.

## 2. The Lien Was Not Properly Perfected Prior to Settlement and Final Order

The record in this case is clear that the lien was not properly perfected in time. In theory, to ensure that any settlements would be void against the lien, the Plaintiff had to give notice to the opposing party before the settlement. Va. Code Ann. § 54.1-3932(A). Section 54.1-3932 specifically provides that, when an attorney-client contract "is made, and written notice of the claim of such lien is given to the opposite party, his attorney, or agent, any settlement or adjustment of the cause of action shall be void against the lien so created, except as proof of liability on such cause of action." *Id.*; *see also Fary v. Aquino*, 218 Va. 889, 891 (1978) (lien was perfected upon notice to

opposing party so that former client's subsequent assignment of its rights to another party did not defeat the lien); *Military Circle Pet Ctr. # 94 v. Docktor Pet Holdings (In re Military Circle Pet Ctr. # 94)*, 181 B.R. 282, 288 (Bankr. E.D. Va. 1994) (holding that attorney's lien on promissory note was not perfected because notice was not given to the opposing party and thus the lien had no priority over any other claim); *Kozich v. Kozich*, 501 So. 2d 1386 (Fla. 4th D.C.A. 1987) (charging lien in Florida available under common law); *In re Marriage of Smith*, 687 P.2d 519 (Colo. App. 1984) (charging lien in Colorado available by statute).

Analogy may be drawn to cases from other jurisdictions. For example, in *Kozich*, the parties negotiated a property settlement agreement which provided that the husband's $93,000 payment to the wife settled the wife's claim against him for attorney's fees. *Kozich*, 501 So. 2d at 1386. After the agreement was incorporated into a final decree of divorce, the wife's attorney filed a notice of charging lien against both the wife and the husband. *Id.* The appellate court held "the trial court erred in suggesting that the attorney may proceed against the husband to collect fees owed by the wife. Whether the final judgment or the settlement came first, on these facts, the husband is not liable for the wife's attorney's fees. . . . The parties to a civil action have the right to settle the controversy between them by agreement at any time and an agreement settling all issues in the case is binding not only upon the parties but also upon the court." *Id.* at 1387 (citation omitted).

Similarly, in *Smith*, the wife's attorney withdrew from her divorce case prior to the final judgment. *Smith*, 687 P.2d at 520. The wife's attorney then gave notice to the wife and husband of an intent to claim a lien for attorney's fees. Thereafter, the husband transferred $8,000 to the wife in exchange for a quitclaim deed to certain real property. Later, the trial court entered a decree of divorce which incorporated the parties' agreement. The wife's attorney then attempted, without success, to enforce an attorney's lien against the husband. On appeal, the court reversed and instructed the lower court to enforce the lien against the husband. The appellate court explained that the $8,000 was part of the proceeds awarded to the wife as part of the final judgment. *Id.* The court stated, "Therefore, because husband was given notice that the lien would become enforceable against any money and property awarded wife as a part of the judgment, we hold that, on equitable principles, husband cannot avoid enforcement of this [lien]." *Id.* at 521.

Under the plain language of § 54.1-3932(A), a lien was created upon Mr. Olson's cause of action when Mr. Olson entered into a contract with the Plaintiff to pursue a divorce. However, the parties reached a settlement agreement and the agreement was incorporated into a final court order in

2006, several months prior to the date when the Plaintiff provided written notice of the claim of the lien to Ms. Olson. Unlike the *Smith* case, the parties were not on formal notice of the attorney's lien when they negotiated their property settlement agreement. Just like the husband and wife in *Kozich*, Mr. and Ms. Olson agreed that they would not hold each other liable for their individual attorney's fees. As in the *Kozich* case, because written notice of the lien was not given prior to the property settlement agreement and final decree of divorce, the lien was not yet perfected and cannot void the settlement.

Admittedly, this interpretation of the statute seems to conflict with Legal Ethics Opinion 1390. In that opinion, it was held that a lawyer may not take a security interest in the marital home, even with the client's consent, to secure legal fees for a divorce action where the marital property is the subject matter of litigation because to do so impermissibly gives the lawyer a proprietary interest in the action. Virginia LEO 1390 (decided March 12, 1991); *see also* Va. Sup. Ct. R. § 6:2-1.5(d)(1) and cmt. 6. However, the LEO 1390 opinion predates the amendment to § 54.1-3932. Additionally, this case is distinguishable because notice only preserves an inchoate lien until judgment or recovery is obtained.[4] Furthermore, a later ethics opinion specifically stated, "The possibility of an adverse effect upon the exercise of free judgment by a lawyer on behalf of his client in litigation generally makes it undesirable for the lawyer to acquire a proprietary interest in the cause of his client. . . . However it is not improper for a lawyer to protect his right to collect a fee for his services by the assertion of *legally permissible liens*, even though by doing so he may acquire an interest in the outcome of litigation." Virginia LEO 1653 (decided September 21, 1995) (emphasis added); *see also* Va. Sup. Ct. R. § 6:2-1.8(j)(1).

---

[4] It appears that LEO 1390 is distinguishable because an attorney's lien is created upon the cause of action and notice only serves to preserve the inchoate lien until final resolution of the case. *See Heinzman v. Fine, Fine, Legum & Fine*, 217 Va. 958, 962, 234 S.E.2d 282, 285 (1977) ("[A]bsent overreaching on the part of an attorney, contracts for legal services are valid and when those services have been performed as contemplated in the contract, the attorney is entitled to the fee fixed in the contract and to the lien granted by the statute."); *Montavon v. United States*, 864 F. Supp. 519, 522 (E.D. Va. 1994) ("Under Virginia law, such a lien comes into existence on the making of the contract of employment between the client and attorney, but then remains inchoate until judgment or recovery is obtained.").

### 3. *The Transfer of Property Was Not Made with Intent to Defraud the Attorney of His Fee*

This court declines the invitation of the Plaintiff to specifically find that the statute requires evidence of bad faith to enforce a lien against a non-client. There is absolutely nothing in the legislative scheme of the statute to require the court to make this kind of finding. However, the court is persuaded that the outcome of its decision is justified because the transfer of the Moray Firth property was negotiated with the Plaintiff's knowledge and advice.

Mr. Olson was represented by the Plaintiff when he transferred the Moray Firth property to Ms. Olson. While the court recognizes the Plaintiff's difficulty in dealing with a bankrupt client, the court finds it peculiar that the Plaintiff now seeks to reclaim the very property he negotiated to transfer to the client of his adversary in the divorce proceeding. Although there may be some circumstances to suggest a sinister device by the Plaintiff, the court declines to make a specific finding that the Plaintiff negotiated this transfer with intent to defraud Ms. Olson of the benefit of the bargain. *Cf. Webb v. Webb*, 16 Va. App. 486, 431 S.E.2d 55 (1993) (invalidating property settlement agreement because of nondisclosure and overreaching by the attorney husband who prepared the agreement); *Adams v. Adams*, Case No. 0272-93-3, 1994 Va. App. LEXIS 42 (unpublished) (property settlement agreement invalidated as being procured by fraud in part because husband dramatically understated value of property to wife).

In fact, it appears that the parties negotiated the property settlement agreement in good faith. Mr. and Ms. Olson were both represented by counsel when the parties agreed to transfer the property to Ms. Olson. *See Stevens v. Sparks*, 205 Va. 128, 133 (1964) (superseded on other grounds) ("An attorney may have a common law possessory lien which is his right to retain the property or money belonging to his client until his fees are paid. Such a lien depends upon possession and if he voluntarily parts with possession the lien ceases."). There is no evidence that the agreement was negotiated in bad faith to defraud the Plaintiff of his fee. *Compare Walton & Adams, P.C. v. D & H Distrib. Co.*, 33 Va. Cir. 98, 99 (Fairfax County 1993), *with Katopodis v. Liberian S/T Olympic Sun*, 282 F. Supp. 369, 372 (E.D. Va. 1968).

In *Walton*, the parties reached a settlement agreement after notice of a lien from the plaintiff's former attorney. *Walton*, 33 Va. Cir. at 98. The defendant attempted to arrange for the settlement to be paid to the plaintiff and the plaintiff's former attorney. *Id.* However, the trial court directed the defendant to pay the proceeds to the plaintiff and the plaintiff's new attorney.

The circuit court upheld the payment because the defendant did not act "in bad faith to defraud an attorney of his fee, but rather in good faith" to honor the court's order. *Id.* at 99.

In *Katopodis*, the defendant and the plaintiff reached a settlement without notifying or involving their counsel in the negotiations. *Katopodis,* 282 F. Supp at 371. The court observed that the defendant knowingly negotiated the settlement "behind the back" of plaintiff's counsel, despite notice of an attorney lien from plaintiff's counsel. *Id.* at 372. The court held, "The defendant settled the litigation with plaintiff at his peril. Where he does so, as here, in bad faith or to prevent the attorney from collecting his fee, defendant is liable therefor." *Id.* The court ordered the defendant to pay attorney's fees to plaintiff's counsel. *Id.*

This case is like *Walton* because the parties negotiated the transfer of the Moray Firth property with the knowledge and advice of counsel. Unlike *Katopodis*, the settlement was apparently reached in good faith without intent to defraud the Plaintiff of his fee. To apply the lien against the Moray Firth property would produce an unjust and inequitable result against Ms. Olson, although the court makes no specific finding that there is evidence of bad faith.

## Conclusion

In conclusion and in light of the arguments of counsel, the record in this matter, and the law, it is hereby ordered that the Plaintiff's Motion to Reconsider is denied and the Defendant's Demurrer is sustained.